IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

HARDIKKUMAR PATEL, KACEY
WHITLOCK, PADMAJA PATEL and
CARIERX LLC f/k/a DERMSERV, LLC,

      Plaintiffs,

v.

HEALIXA, INC. f/k/a EMERALD
ORGANIC PRODUCTS, INC.

      Defendant.

Case No: 2021-CA-_____

_____/

## **COMPLAINT**

    Plaintiffs, HARDIKKUMAR PATEL, KACEY WHITLOCK, PADMAJA PATEL and CARIERX

LLC f/k/a DERMSERV, LLC (hereinafter collectively "PLAINTIFFS"), by and through their

undersigned attorney, hereby sue the Defendant, HEALIXA, INC. f/k/a EMERALD ORGANIC

PRODUCTS, INC. ("DEFENDANT"), and, allege as follows:

### **GENERAL ALLEGATIONS**

    1.    The Plaintiff, HARDIKKUMAR PATEL ("H. PATEL") is an individual residing in

Hillsborough County, Florida.

    2.    The Plaintiff, KACEY WHITLOCK ("WHITLOCK") is an individual residing in

Hillsborough County, Florida.

    3.    The Plaintiff, PADMAJA PATEL ("P. PATEL") is an individual residing in

Hillsborough County, Florida.

    4.    CARIERX LLC f/k/a DERMSERV, LLC ("CARIERX") is a Florida limited liability

company with its principal place of business located in Hillsborough County, Florida.

5. The Defendant, HEALIXA, INC. f/k/a EMERALD ORGANIC PRODUCTS, INC. ("DEFENDANT") is a company organized under Nevada law with its principal place of business located in Suffolk County, New York.

6. Jurisdiction and venue are proper in Brevard County as a result of the DEFENDANT transacting, doing and soliciting business, including business with the PLAINTIFFS, in Brevard County. Additionally, DEFENDANT has regularly conducted business within Brevard County and a substantial part of the events or omissions giving rise to the claims occurred in Brevard County. Finally, state courts have concurrent jurisdiction with federal courts for lawsuits in equity or actions at law to enforce liabilities and duties under the Securities Act of 1933.

7. The DEFENDANT acquired CARIERX via a Merger Agreement dated March 30, 2020, which was duly executed on March 27, 2020 by Ian Parker, on behalf of the DEFENDANT, and H. PATEL, on behalf of CARIERX. A copy of the Merger Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

8. EOP RX Merger Sub, LLC is a Florida limited liability company which, upon information and belief, is wholly owned by the DEFENDANT and was organized for the purpose of effectuating the acquisition of CARIERX.

9. Pursuant to the Agreement, DEFENDANT acquired CARIERX via a Type "A" Reverse Merger. Specifically, the Merger Sub was merged into CARIERX , which continued its existence under the laws of Florida as a "consolidated subsidiary" of DEFENDANT, with DEFENDANT owning 51% of the shares of CARIERX and H. PATEL maintaining 49% of the CARIERX's shares.

10. As consideration for this acquisition, DEFENDANT issued twenty million shares of DEFENDANT'S common stock in the following manner: fifteen million (15,000,000.00) shares to H. PATEL; four million (4,000,000.00) shares to P. PATEL; and one million

2

(1,000,000.00) shares to WHITLOCK. Pursuant to the Agreement, additional shares were to be issued based on certain benchmarks being met.

11.    DEFENDANT was required to issue the above-described shares on the effective date of the merger. However, DEFENDANT did not issues the shares until June 4, 2020. The shares were placed with a transfer agent, Pacific Stock Transfer Company, in custodial accounts under H. PATEL, P. PATEL and WHITLOCK's names.

12.    The common stock issued pursuant to the merger is categorized as "restricted securities" under Section 4(a)(2) of the Securities Act of 1933 and were issued bearing a standard restrictive legend, as reflected in the Agreement. As such, H. PATEL, P. PATEL and WHITLOCK have been the beneficial owners of the shares since March 27, 2020.

13.    On or about April 28, 2021, DEFENDANT unlawfully informed the Pacific Stock Transfer Company that it had cancelled or revoked the twenty million shares belonging to the H. PATEL, P. PATEL and WHITLOCK.

14.    DEFENDANT's stated reasoning for cancelling the issued shares was wholly pretextual, without merit and premised upon unsubstantiated and immaterial alleged breaches of the Merger Agreement. In short, the alleged breaches are both factually inaccurate and, further, legally insufficient to justify the revocation of the share.

15.    Furthermore, the Merger Agreement does not contain a termination or clawback provision that would allow for the DEFENDANT to reap all of the benefit of acquiring CARIEREX without paying any consideration for that acquisition.

16.    Notably, the DEFENDANT failed to contact P. PATEL and WHITLOCK prior to the April 28th cancellation or revocation described above, wherein the issued shares were taken out of the PLAINTIFFS' accounts with Pacific Stock.

17.    Subsequently, H. PATEL, P. PATEL and WHITLOCK informed Pacific Stock Transfer of the dispute between PLAINTIFFS and DEFENDANT. As a result, the shares were

3

re-issued and Pacific Stock Transfer returned the shares to H. PATEL, P. PATEL and WHITLOCK accounts.

18.   H. PATEL, P. PATEL and WHITLOCK have since requested that DEFENDANT immediately remove the restrictive legend from the shares.

19.   While a transfer agent, in this instance Pacific Stock Transfer Company, may remove a restrictive legend, it may not do so without the express consent of the issuer, who in this case is the DEFENDANT.

20.   Notwithstanding the valid request, the DEFENDANT has refused to provide its express consent to Pacific Stock Transfer to remove the restrictive legend.

21.   SEC Rule 144 permits public resales of restricted securities without having to register the resale with the SEC. A person selling restricted securities who satisfies all applicable conditions of Rule 144 in connection with the transaction is deemed not to be an "underwriter" as defined in Section 2(a)(11) of the Securities Action of 1933 and, therefore, may rely on the Section 4(1) exemption for the resale of securities.

22.   According to Rule 144, an individual who is not an affiliate of the issuer and who has not been an affiliate for at least three months, may sell the securities without regard to the conditions set forth in Rule 144, as long as the individual has held the restrictive securities for at least one year.

23.   Under Rule 144(a)(1), an "affiliate" of or person "affiliated" with a specified person shall mean a person that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with, such issuer. *17 C.F.R. § 144(a)(1).*

24.   H. PATEL, P. PATEL and WHITLOCK are not, and at all relevant times hereto were not, affiliates of the DEFENDANT because they have not directly, or indirectly through one or more intermediaries, controlled or were controlled by, or under the common control with DEFENDANT.

25.     Due to the fact that the shares were due to H. PATEL, P. PATEL and WHITLOCK on March 27, 2020 but actually issued on June 4, 2020, they have been the beneficial owners of the shares for more than one year.

26.     As indicated above, on or about May 21, 2021, PLAINTIFFS sent a correspondence to DEFENDANT stating that due to the expiration of the one-year holding period, DEFENDANT is required to direct its transfer agent to remove the restricted legend from H. PATEL, P. PATEL and WHITLOCK's shares.

27.     On or about June 7, 2021, PLAINTIFFS sent a second correspondence to DEFENDANT that, again, demanded the removal of the restrictive legend by June 11, 2021.

28.     As of the filing of this Complaint, the DEFENDANT has not responded to the correspondences and has refused to provide the express consent to remove the restricted legend from the shares. As such, Pacific Stock Transfer Company will not transfer the shares without an instruction from DEFENDANT to remove the legend.

29.     Based on the foregoing, although H. PATEL, P. PATEL and WHITLOCK have met the required one-year holding period required for non-affiliates by Rule 144, they are unable to sell the shares on the open market.

30.    All conditions precedent to bringing this action have been met, have been excused, been waived or have otherwise occurred.

31.     PLAINTIFFS have engaged the services of the undersigned attorney and are obliged to pay him a reasonable fee for said services.

### COUNT I: ACTION FOR DECLARATORY RELIEF

32.     This is an action seeking a declaratory judgment from the Court and brought pursuant to Chapter 86, Florida Statutes.

33.     H. PATEL, P. PATEL and WHITLOCK re-allege and incorporate the allegations contained in Paragraphs 1 though 31.

5

34.     As is more particularly described in the General Allegations, a real controversy exists between H. PATEL, P. PATEL and WHITLOCK and DEFENDANT due to the DEFENDANT's refusal to direct its transfer agent, Pacific Stock Transfer Company, to remove the restrictive legend from H. PATEL, P. PATEL and WHITLOCK's shares of DEFENDANT's common stock.

35.     H. PATEL, P. PATEL and WHITLOCK have a bona fide, actual, present, and practical need for a declaration regarding whether they have met all conditions necessary under SEC Rule 144 which, accordingly, would require DEFENDANT to direct its transfer agent to remove the restrictive legends from the shares.

36.     This issue deals with a present, ascertained, or ascertainable state of facts or a present controversy to a state of facts and some immunity, power, privilege or right of H. PATEL, P. PATEL and WHITLOCK is dependent on the fact or the law applicable to the facts. Specifically, H. PATEL, P. PATEL and WHITLOCK's right to transfer or sell the shares is dependent on DEFENDANT issuing its express consent to its transfer agent, Pacific Stock Transfer Company.

37.     DEFENDANT has, or reasonably may have, an actual, present, adverse and antagonistic interest in the subject matter, either in law or fact.

38.     The antagonistic and adverse interests are all properly before the Court and the relief sought is not merely the giving of legal advice by the Courts or the answer to questions propounded from curiosity.

39.     DEFENDANTS' conduct described above has caused H. PATEL, P. PATEL and WHITLOCK to incur damages because they have been unable to sell or otherwise dispose of the shares.

40.     Based on the foregoing, the parties are in need of an Order declaring their rights as it pertains to the disputed shares.

6

Wherefore, H. PATEL, P. PATEL and WHITLOCK respectfully request this Court enter a declaratory decree determining, specifically, that H. PATEL, P. PATEL and WHITLOCK have met all conditions required by SEC Rule 144 necessary for the removal of the restrictive legends; that DEFENDANT has a duty to direct its transfer agent, Pacific Stock Transfer Company, to remove the restrictive legends from the shares and to register transfer of the shares in accordance with Fla. Stat. § 678.4011, together with such other and further relief as this Court deems just, proper and equitable.

### COUNT II: ACTION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

41.     This is an action seeking the equitable remedy of temporary and permanent injunctive relief.

42.     H. PATEL, P. PATEL and WHITLOCK re-allege and incorporate the allegations contained in Paragraphs 1 though 31.

43.     As is more particularly described in the General Allegations, H. PATEL, P. PATEL and WHITLOCK were issued, collectively, twenty million shares of DEFENDANT's common stock on or about June 4, 2020.

44.     Those shares were subject to a one-year mandatory holding period for non-affiliated individuals under SEC Rule 144.

45.     H. PATEL, P. PATEL and WHITLOCK have unequivocally been the beneficial owners of the shares for over one year and have repeatedly requested that DEFENDANT direct its transfer agent to remove the restrictive legends on the shares.

46.     DEFENDANTS have failed or refused to provide the express consent to its transfer agent for removal of the restrictive legends.

47.     H. PATEL, P. PATEL and WHITLOCK have a clear legal right to have the restrictive legends removed from the shares under SEC Rule 144 and Fla. Stat. § 678.4011.

48.     H. PATEL, P. PATEL and WHITLOCK lack an adequate remedy at law because any delay in the removal of the restrictive legends severely impacts the value of the shares due to market fluctuations.

49.     H. PATEL, P. PATEL and WHITLOCK will suffer irreparable harm if the restrictive legends are not removed and the granting of injunctive relief in this case will not be detrimental to the public. To the contrary, it will benefit the public in that it will preclude companies from engaging in fraudulent mergers or from reaping the benefits of acquiring a company without paying any consideration for that acquisition.

WHEREFORE, H. PATEL, P. PATEL and WHITLOCK respectfully request the Court grant both temporary and permanent injunctive relief that requires DEFENDANT to direct the transfer agent to remove the restrictive legends from the shares, together with such other and further relief as this Court deems just and proper.

## COUNT III: ACTION FOR VIOLATION OF FLA. STAT. § 678.4011

50.     This is an action for damages in excess of $30,000.00.

51.     H. PATEL, P. PATEL and WHITLOCK re-allege and incorporate the allegations contained in Paragraphs 1 though 31.

52.     Pursuant to Fla. Stat. § 678.4011, when a certificated security in registered form is presented to an issuer with a request to register transfer shares, the issuer is under duty to register the transfer of the shares if certain conditions are met.

53.     As is more particularly described above, H. PATEL, P. PATEL and WHITLOCK are eligible to have the security registered in their names.

54.     The instruction has been made by an agent who has authority to act on behalf of the H. PATEL, P. PATEL and WHITLOCK.

55.     The instruction contained reasonable assurances that the instruction was genuine and authorized.

8

56.     All applicable laws relating to collection of taxes have been complied with.

57.     The transfer would not violate any restriction on transfer imposed by the issuer in accordance with Fla. Stat. § 678.2041.

58.     A demand that DEFENDANT not register transfer has not become effective under Fl. Stat. § 678.4031, nor has the issuer complied with Fla. Stat. § 678.4031(2) but no legal process or indemnity bond is obtained as provided in Fla. Stat. § 678.4031(4).

59.     The transfer would be rightful.

60.     Accordingly, pursuant to Fla. Stat. § 678.4011(2) DEFENDANT is under a duty to register the transfer of the securities and PLAINTIFFS have properly instructed DEFENDANT to direct its transfer agent to remove the restrictive legends so that the shares may be sold.

61.     Based on the foregoing, H. PATEL, P. PATEL and WHITLOCK have suffered damages resulting from the unreasonable delay in registration or failure to remove the restrictive legends.

WHEREFORE, H. PATEL, P. PATEL and WHITLOCK demand judgment in their favor for damages, interests, costs and such other and further relief as this Court deems just and proper.

## COUNT IV: CONVERSION

62.     This is an action for damages that exceed $30,000.00.

63.     H. PATEL, P. PATEL and WHITLOCK re-allege and incorporate the allegations contained in Paragraphs 1 though 31.

64.     H. PATEL, P. PATEL and WHITLOCK are the rightful owners of twenty million shares of DEFENDANT's common stock.

65.     H. PATEL, P. PATEL and WHITLOCK have requested or instructed that DEFENDANT direct its transfer agent, Pacific Stock Transfer Company, to remove the restrictive legends from the shares.

9

66.     Notwithstanding the fact that H. PATEL, P. PATEL and WHITLOCK are eligible and entitled to have the restrictive legends removed, DEFENDANT has refused or failed to do so.

67.     DEFENDANT's conduct has deprived H. PATEL, P. PATEL and WHITLOCK of their property rights by restricting H. PATEL, P. PATEL and WHITLOCK's ability to sell or otherwise dispose, transfer or sell their shares.

68.     DEFENDANT's wrongful restriction on H. PATEL, P. PATEL and WHITLOCK's shares is inconsistent with their ownership interest in DEFENDANT's common stock and amounts to a wrongfully asserted act of dominion over their property.

69.     The damages suffered by H. PATEL, P. PATEL and WHITLOCK includes, but is not limited to, the loss of the value of the shares.

WHEREFORE, H. PATEL, P. PATEL and WHITLOCK demand judgment in their favor for damages, costs, interests and such other and further relief as this Court deems just and proper.

## COUNT V: BREACH OF CONTRACT

70.     This is an action for damages in excess of $30,000.00.

71.     CARIERX re-alleges and incorporates the allegations contained in Paragraphs 1 though 31.

72.     As is more particularly described above, the DEFENDANT and CARIERX entered into a Merger Agreement wherein the DEFENDANT acquired CARIERX in exchange for DEFENDANT issuing twenty million shares of DEFENDANT'S common stock in the following manner: fifteen million (15,000,000.00) shares to H. PATEL; four million (4,000,000.00) shares to P. PATEL; and one million (1,000,000.00) shares to WHITLOCK.

73.     CARIERX has complied with its obligations pursuant to the Merger Agreement.

74.     The DEFENDANT, on the other hand, has materially and substantially breached its contractual obligations by failing or refusing to direct Pacific Stock Transfer Company to remove the restrictive legend from the shares which has resulted in the DEFENDANT acquiring CARIERX without paying any valid consideration for the acquisition.

75.     Furthermore, the DEFENDANT has breached the confidentiality provisions of the Agreement by using or disclosing information made available to them by CARIERX regarding its respective, business, properties, assets, technology, financials, current or pending or potential vendor and customer lists, contracts, etc. DEFENDANT utilized CARIERX's trade secrets for the purpose of starting a separate company in order to compete directly with the parties to the Merger Agreement.

76.     As a direct and proximate result of this breach of contract, CARIERX has suffered damages.

WHEREFORE, CARIERX demands judgment in its favor for damages, costs, pre- and post-judgment interest, attorney's fees and such other and further relief as this Court deems just and proper.

## COUNT VI: TRADE SECRET MISAPPROPRIATION

77.     This is an action for damages in excess of $30,000.00.

78.     CARIERX re-alleges and incorporates the allegations contained in Paragraphs 1 though 31 and 75, above.

79.     By virtue of the Merger Agreement entered into by and between CARIERX and the DEFENDANT, the DEFENDANT acquired trade secrets under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

80.     CARIERX has incurred great expense to develop the trade secrets and has diligently protected the trade secrets from disclosure beyond those authorized to access the information and CARIERX enjoys a competitive advantage as a result of the trade secrets.

11

81.     DEFENDANT improperly and in violation of the Merger Agreement used and disclosed CARIERX's trade secrets for the purpose of starting a separate company that would compete directly with CARIERX.

82.     At the time of the use and disclosure and at all relevant times to this action, the DEFENDANT knew that CARIERX did not consent to the use and disclosure its trade secrets in this manner.

83.     Based on the foregoing, the DEFENDANT has violated Chapter 688, Florida Statutes.

84.     CARIERX has suffered and continues to suffer great damage as a result of DEFENDANT's misappropriation of its trade secrets.

WHEREFORE, CARIERX demands judgment in its favor for damages, costs, pre- and post-judgment interest, attorney's fees and such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

PLAINTIFFS hereby demands a jury trial on all issues so triable.

Dated: September 28, 2021.

**FRESE, WHITEHEAD & ANDERSON, P.A.**

By:     /s/   Allan P. Whitehead
         Allan P. Whitehead, Esq.
         Florida Bar No. 870927
         James D. Henderson, Esq.
         Florida Bar No. 0084257
         2200 Front Street, Suite 301
         Melbourne, FL 32901
         (Tel) 321.984.3300; (Fax) 321.951.3741
         Primary: Awhitehead@fresewhitehead.com
         Jhenderson@fresewhitehead.com
         Secondary: dmohre@fresewhitehead.com
         And jmcguire@fresewhitehead.com
         Attorneys for Plaintiffs

I:\Allan\DermServ LLC\Complaint-State Court 092021

DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3630DF911

*EX A*

official Copy

## Contents

AGREEMENT AND PLAN OF MERGER ....................................................................... 4

RECITALS ..................................................................................................................... 4

ARTICLE I ...................................................................................................................... 5

The Merger ...................................................................................................................... 5

Section 1.01 Merger ........................................................................................................ 5

Section 1.02 Effective Time and Closing. .................................................................... 5

Section 1.03 Governing Documents; Directors and Officers. ..................................... 6

Section 1.04 Conversion of Shares. .............................................................................. 6

Section 1.05 Effect of the Merger. ................................................................................ 7

Section 1.06 Surrender and Exchange of Certificates. ................................................ 7

Section 1.07 Common Stock and Membership Units. .................................................. 8

Section 1.08 Operation of Surviving LLC. ................................................................... 8

Section 1.09. Access and Confidentiality. .................................................................... 8

ARTICLE II ..................................................................................................................... 9

Certain Conditions ......................................................................................................... 9

Section 2.01 OTC Markets Group Status. ................................................................... 9

ARTICLE III .................................................................................................................... 9

Representations and Warranties of the Company ......................................................... 9

Section 3.01. Good Title. ............................................................................................... 9

Section 3.02. Power and Authority. .............................................................................. 9

Section 3.03. Unregistered Securities. ....................................................................... 10

Section 3.04 General Company Acknowledgment. .................................................... 10

Section 3.05 Organization, Standing and Power. ...................................................... 10

Section 3.06. Capital Structure. .................................................................................. 10

Section 3.07. No Conflicts; Consents. ........................................................................ 11

Section 3.08. Taxes. ..................................................................................................... 11

Section 3.09. Litigation. ............................................................................................... 11

Section 3.10. Compliance with Applicable Laws. ...................................................... 12

Section 3.11.  Brokers. ................................................................................................. 12

Section 3.12. Contracts. ............................................................................................... 12

Section 3.13. Title to and Conditions of Properties. .................................................. 12

Section 3.14. Insurance. ............................................................................................... 12



PLAINTIFF'S EXHIBIT A



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

Section 3.15. Personnel and Labor Matters. ........................................................ 13

Section 3.16. ERISA Compliance. ......................................................................... 13

Section 3.17. Disclosure. ......................................................................................... 13

Section 3.18. Unlawful Payments. ......................................................................... 13

Section 3.19. Licenses and Permits. ..................................................................... 13

Section 3.20. Environmental Laws. ....................................................................... 13

Section 3.21. Indebtedness. ..................................................................................... 14

Section 3.22 Financial Statements. ....................................................................... 14

ARTICLE III. .............................................................................................................. 14

Representations and Warranties of Parent and Merger Sub ...................... 14

Section 3.01. Organization, Standing and Power. ............................................ 14

Section 3.02. Capital Structure. ............................................................................ 15

Section 3.03. Authority; Execution and Delivery; Enforceability. .............. 15

Section 3.04. No Conflicts; Consents. ................................................................. 15

Section 3.05 Validity of Shares. ........................................................................... 15

Section 3.06 Taxes. ................................................................................................... 15

Section 3.07. Employment and Benefit Plans. .................................................. 16

Section 3.08. ERISA Compliance; No Benefit Plans. ..................................... 16

Section 3.09. Litigation. ........................................................................................... 16

Section 3.10. Compliance with Applicable Laws. ............................................ 16

Section 3.11. Contracts. ........................................................................................... 16

Section 3.12. Title to Properties. .......................................................................... 17

Section 3.13. Labor Matters. .................................................................................. 17

Section 3.14. Transactions With Affiliates and Employees. ......................... 17

Section 3.15. No Additional Agreements. ........................................................... 17

Section 3.16. No Post-Merger Indebtedness. ..................................................... 17

Section 3.17. Brokers. ............................................................................................... 17

Section 3.18 Financial Statements. ....................................................................... 17

ARTICLE IV ............................................................................................................... 18

Letter of Transmittal ............................................................................................... 18

Section 4.01 Equity Holders of the Company. ................................................... 18

ARTICLE V .................................................................................................................. 18

Deliveries ...................................................................................................................... 18

Section 5.01. Deliveries of the Company. ........................................................... 18



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

Section 5.02. Deliveries of Parent.................................................................. 19

ARTICLE VI ....................................................................................................... 19

Further Conditions to Closing........................................................................ 19

Section 6.01. Company Conditions Precedent............................................. 20

Section 6.02 Parent Conditions Precedent.................................................. 20

ARTICLE VII ...................................................................................................... 21

Certain Covenants............................................................................................ 21

Section 7.01 Public Announcements. ............................................................. 21

Section 7.02 Continued Efforts....................................................................... 21

Section 7.03 Indemnification........................................................................... 21

Section 7.04 Termination.................................................................................. 22

ARTICLE VIII ..................................................................................................... 22

Conduct of Business Pending Merger........................................................... 22

Section 8.01 Conduct of Business By Parties............................................... 22

ARTICLE IX ........................................................................................................ 23

Miscellaneous .................................................................................................... 23

Section 9.01 Notices. ......................................................................................... 23

Section 9.02. Amendments; Waivers............................................................. 23

Section 9.03. Severability.................................................................................. 24

Section 9.04. Entire Agreement; Survival of Terms.................................... 24

Section 9.05. Governing Law. .......................................................................... 24

Section 9.06. Assignment. ................................................................................ 24

Section 9.07. Additional Acts and Deliverables. ......................................... 24

Section 9.08 No Third Party Beneficiaries. ................................................. 24

Section 9.09 Counterparts............................................................................... 24

Exhibit A - RESTATED AND AMMENDED OPERATING AGREEMENT .......... 26



DocuSign Envelope ID: 4D361126-7DE7-4667-825B-AAC3530DF911

# AGREEMENT AND PLAN OF MERGER

This Agreement and Plan of Merger ("Agreement"), entered into and effective as of the ____ day of _____, 20__, by and among Emerald Organic Products, Inc., a Nevada corporation ("Parent"), EOP RX MERGER SUB LLC, an Florida limited liability company ("Merger Sub") and a wholly owned subsidiary of Parent, and DERMSERV LLC, a Florida Corporation (the "Company").

---

*RECITALS*

---

WHEREAS, this Agreement contemplates a merger transaction in which Parent shall acquire the Company pursuant to a Type "A" Reverse Merger in which the Merger Sub shall merger with and into the Company, with the Company surviving the merger, in accordance with the Florida Limited Liability Company Act (the "Florida Statutes") and the terms and conditions of this Agreement, resulting in the member holders of equity units of the Company receiving Parent Common Shares as consideration in such merger;

FURTHER WHEREAS, the respective Board of Directors or Governors of Parent and the Company have each determined that it is fair to and in the best interests of their respective entities and equity holders for Merger Sub to be merged with and into the Company (the "Merger") upon the terms and conditions and share exchange set forth in this Agreement;

FURTHER WHEREAS, the sole member of Merger Sub has approved this Agreement in accordance with Florida laws and statutes and upon the terms and subject to the conditions contained in this Agreement;

FURTHER WHEREAS, the parties hereto intend and desire to enter into and effect this statutory merger transaction resulting in an exchange by holders of equity units of the Company ("Pre-Merger Holders") on a pro rata basis for Common Shares of Parent as set forth herein, after which the Company shall be a consolidated subsidiary of Parent, all pursuant to the terms and conditions of this Agreement and Florida Statutes;

FURTHER WHEREAS, at the Effective Time of this Merger, the Common Shares of Parent to be issued as consideration in this Merger will be contributed by Parent and Merger Sub as set forth herein;

FURTHER WHEREAS, this merger transaction is intended to constitute and qualify as a business combination reorganization within the meaning of Section 368 of the Internal Revenue Code of 1986, as amended; and



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

FURTHER WHEREAS, the Company, Parent and Merger Sub desire to make certain representations, warranties, covenants and agreements in connection with the Merger.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto, intending to be legally bound hereby, now enter into and approve this definitive agreement as follows:

## ARTICLE I

### The Merger

Section 1.01 Merger. Upon and subject to the terms and conditions of this Agreement, at the Effective Time hereof, Merger Sub shall be merged with and into the Company in accordance with Florida Statutes (the "Merger"), whereupon the separate legal existence of Merger Sub shall cease, and the Company shall be the surviving limited Corporation in the Merger (the "Surviving LLC.") and shall continue its official existence under the laws of Florida as a consolidated subsidiary of Parent whereby the Parent shall own 51% of the Shares. In addition, the operating agreement and by-laws and of the Company shall be amended and restated as attached in Exhibit A.

At the Effective Time of the Merger, the effect of the Merger shall be as provided in this Agreement and the applicable provisions of Florida Statutes; and upon consummation of the Merger, all the property, rights, privileges and powers of the Company and the Merger Sub shall vest in the Surviving LLC, and all debts liabilities, obligations, restrictions, disabilities and duties of each of those companies shall become the debts, liabilities, restrictions, disabilities and duties of the Surviving LLC, as provided under Florida Statutes.

Section 1.02 Effective Time and Closing. The Merger shall become effective upon the filing of the Certificate of Merger with the Secretary of State of Florida, or at such later time as Merger Sub and the Company shall agree to in the Certificate of Merger (the "Effective Time").

The Closing and Closing Date of the Merger shall occur concurrently with the Effective Time. The Closing shall occur at the executive offices of Parent in Holbrook, Florida. Prior to the Closing, all conditions required and actions to be taken hereunder shall have been completed or properly waived, and all documents, certificates, opinions or other written instruments required for the Merger shall have been executed and delivered or properly waived.



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

Section 1.03 Governing Documents; Directors and Officers.

(a)     The Articles of Organization and any Bylaws and operating or control agreements and any amendments thereto of the Company as in effect immediately prior to the Effective Time shall cease to be the governing documents of the Surviving LLC from and after the Effective Time and the new Amended and Restated Operating Agreement, Charter and other governing documents attached to Exhibit A shall become the governing document. In addition, the Board of Directors of the Surviving LLC shall be re-configured as follows, with the appropriate resignations and appointments.

Section 1.04 Conversion of Shares.

(a)     As of the Effective Time hereof, each Company equity unit outstanding immediately prior to the Effective Time shall be converted, without any action on the part of the holders thereof, into the right to receive the Per Unit Consideration. The Common Shares of Parent to be issued pursuant to this Merger shall be paid with duly authorized, fully paid and non-assessable shares of common stock of Parent. The Company and its holders of equity interests on a pro rata basis shall have completed this statutory merger transaction which results in Parent acquiring

51% of all equity units of the Company in exchange for the ability to vest up to 20,000,000 shares of common stock of Parent in accordance with the milestones below.

(b)     Any issued units of the Company owned by the Company (treasury units) shall be automatically cancelled and extinguished without any exchange thereof and without any further action on behalf of the Company.

(c)     As of the Effective Time, each membership unit of Merger Sub outstanding immediately prior to the Effective Time shall be converted into one validly issued unit of membership in the Surviving LLC.

(d)     From and after the Effective Time, holders of equity units of the Company outstanding immediately prior to the Effective Time shall cease to have any rights with respect to such Company units except as provided for in this Agreement and the Certificate of Merger.

(e)     "Aggregate Merger Consideration" shall mean up to twenty million (20,000,000) shares of Parent common stock.

(f)     "Mile Stones" shall mean bench marks used to determine an amount and timing of the 20,000,000 shares to be released on a pro rata basis to the Company pre-merger members.

(h)     As of the Effective Time of the Merger, the membership equity books of the Company shall be closed, and there shall be no further registration of transfers on the



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

membership transfer books of the Surviving LLC regarding any membership equity units of the Company that were outstanding immediately prior to the Effective Time of the Merger.

MILESTONES

| Milestone | | Vesting to Pre-merger shareholders |
|---|---|---|
| Effective Date of Merger | Parent owns 51% of Company | 5,000,000 of EMOR common shares |
| Users of Bonsa Rx Delivery | Company Reaches 50,000 users in a month | 3,000,000 of EMOR common shares |
| Users of Bonsa Rx Delivery | Company Reaches 100,000 users in a month | 3,000,000 of EMOR common shares |
| Users of Bonsa Rx Delivery | Company Reaches 150,000 users in a month | 3,000,000 of EMOR common shares |
| Users of Bonsa Rx Delivery | Company Reaches 200,000 users in a month | 3,000,000 of EMOR common shares |
| Users of Bonsa Rx Delivery | Company Reaches 250,000 users in a month | 3,000,000 of EMOR common shares |

*Company pre-merger shareholders shall own 49% of the Company post the effective date of the Merger.
*all shares issued under 4(a)2 exemption under the Security Act.

Section 1.05 Effect of the Merger. At the Effective Time, the Merger shall have the effects set forth in Sections of the Florida Limited Liability Act.

Section 1.06 Surrender and Exchange of Certificates. Promptly after the Effective Time, Parent shall appoint its stock transfer agent as the "Exchange Agent" for this Merger for the purpose of paying the exchange consideration to all unit holders of the Company. Promptly after the Effective Time, Parent shall send or cause to be sent to each unit holder of the Company a Letter of Transmittal and related instructions for use in the exchange. Each holder of Company units shall be entitled to receive the exchange consideration into which such Company units have been converted pursuant to Section 104 hereof upon surrender of the holder's membership unit certificate or certificates and the validly executed Letter of Transmittal representing membership units of the Company (or an acceptable affidavit and indemnification evidencing loss or destruction of such certificates). Until the certificate(s) or affidavit are surrendered together with the Letter of Transmittal, each certificate of membership units of the Company shall after the Effective Time represent only the right to receive Parent Common Stock incident to this Merger. All exchange closing consideration paid with respect to membership units of the Company in this Merger shall be deemed to have been paid in full satisfaction of all rights pertaining to the membership units of the Company. All payments of Parent common stock made to unit holders of Company in this Merger, whether at Closing or afterwards, shall be without interest of any kind. None of Parent, Merger Sub or the Surviving LLC shall be liable to any person in respect to any cash or securities required



DocuSign Envelope ID: 4D361126-7DE7-4667-825B-AAC3580DF911

to be delivered to a public official pursuant to any applicable abandoned property, escheat or similar Law or Statute.

Section 1.07 Common Stock and Membership Units.

Parent hereby covenants and agrees that it will cause sufficient Parent Common Stock to be authorized and available at the Effective Time as required to complete the Closing of this Merger.

Concurrently, the Company hereby covenants and agrees that unless amended in writing by all parties hereto, the total of all outstanding membership units of the Company entitled to receive Parent Common Shares in this Merger will be set forth in full in the Ledger, and that there will be no outstanding options, warrants, or any other derivative rights in respect to the membership units of the Company.

The common stock consideration to be issued to Company members incident to the exchange required by this Merger will be issued as "restricted securities" in a transaction exempt from registration under Section 4(a)(2) of the Securities Act of 1933, and may not be re-offered or resold other than in a registered transaction or an applicable exemption therefrom. Accordingly, certificates for such Parent common stock will be issued bearing a standard restrictive legend substantially as follows:

"THE SHARES OF STOCK REPRESENTED BY THIS CERTIFICATE HAVE BEEN ACQUIRED FOR INVESTMENT PURPOSES ONLY, AND THE RESALE OF SUCH SHARES HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED. SUCH SHARES MAY NOT BE RESOLD OR OTHERWISE TRANS-FERRED IN THE ABSENCE OF SUCH REGISTRATION WITHOUT AN EXEMP-TION UNDER THE SECURITIES ACT OF 1933, AS AMENDED."

Section 1.08 Operation of Surviving LLC. The Company hereby acknowledges that upon the effectiveness of the Merger, and the compliance by Parent and Merger Sub with their respective duties and obligations hereunder, Parent shall have the unqualified right to deal with the assets and business of the Surviving LLC as its own property without limitation on the use of such assets or the conduct of such business.

Section 1.09. Access and Confidentiality.

Access – Each party hereto shall provide another party, its legal counsel and auditor or other representatives, with such due diligence information as the requesting party from time to time reasonably may request, and shall provide the other party with access to or copies of books and records (including all financial, accounting and bank account records, current or pending or potential vendor and customer lists, and material contracts or commitments) of the party, as the requesting party may from time to time reasonably request.



DocuSign Envelope ID: 4D361126-7DE7-4667-825B-AAC3530DF911

Confidentiality – Unless required by law, prior to and after the Closing Date of this Agreement, all parties hereto shall not use or disclose to any third person any information made available to each of them by another party in connection with the respective business, properties, assets, technology, capital structure, identity of shareholders, or any other material matter, unless such disclosure is consented to in writing by the other party. Without limitation, this material obligation of confidentiality shall apply to current business and development practices, strategies, technologies, and future business relationships of any party hereto or their subsidiaries and affiliates.

## ARTICLE II

### Certain Conditions

Section 2.01 OTC Markets Group Status. Prior to the Effective Time, Parent shall file the required financial and other disclosure documents and pay the required fee to have its common stock quoted on the upper level of the Pink quotation tier of OTC Markets Group.

## ARTICLE III

### Representations and Warranties of the Company

The Company hereby represents and warrants to Parent and Merger Sub the following:

Section 3.01. Good Title. The membership unit holders of the Company on the Ledger for this transaction are the record and beneficial owners, and have good and marketable title to their respective membership units, with the right and authority to exchange, transfer and deliver such securities as provided herein. Upon closing this merger transaction, Parent will receive good title to all outstanding membership units, free and clear of all liens, security interests, pledges, and claims of any kind. In addition, Company warrants that all of the following patents shown in Exhibit C shall transfer with the Company in this contemplated transaction and shall not be spun off, transferred or assigned prior to or contemporaneously with the effective date of this Merger.

Section 3.02. Power and Authority. The Company has all requisite power and authority to execute and deliver this Agreement and to consummate the transactions required by this Agreement. All acts required to be taken by the Company to enter into this Agreement have been properly taken, and this Agreement constitutes a legal, valid



DocuSign Envelope ID: 4D3C1126-7DE7-4567-825B-AAC3630DF911

and binding obligation of the Company. When executed and delivered by the Company and approved by members of the Company as required by Florida Statutes and any relevant governance documents of the Company, this Agreement will be enforceable against the Company in accordance with its terms.

Section 3.03. Unregistered Securities. The Company understands that the shares of Parent to be issued in this merger transaction have not been registered under the Securities Act of 1933, as amended (the "Securities Act") or any state securities registration laws and, when issued in accordance with the provisions of this Agreement, will be issued as restricted securities by reason of exemptions from such registration provisions. The Company further understands that the Common Shares to be issued by Parent incident hereto will be acquired by members of the Company in a transaction not involving a public offering and thus may not be resold or transferred without registration under the federal Securities Act or the existence of an appropriate exemption therefrom.

Section 3.04 General Company Acknowledgment. There is no material private action, suit, proceeding, claim, arbitration or investigation pending before any court or tribunal, foreign or domestic, or otherwise pending against the Company, or any of the Company's assets or properties, unless set forth on Schedule 3.04 hereof. There is no judgment, decree or order or pending action or legal proceeding against any unit holder of the Company that could prevent, enjoin, alter or delay any of the transactions contemplated by this Agreement. There are no material claims, actions, suits, proceedings, inquiries, labor disputes or investigations pending against the Company or any of its assets, at law or in equity by or before any governmental entity or in arbitration or mediation. No bankruptcy, receivership or debtor relief proceedings are pending against the Company. The Company has complied in all material respects with, is not in material violation of, and has not received any notices of violation with respect to, any federal, state, local or foreign law, judgment, decree, injunction or order, applicable to it or the conduct of its business.

Section 3.05 Organization, Standing and Power. The Company is duly organized, validly existing and in good standing under the laws of the State of Florida and has the power and authority and possesses all governmental franchises, licenses, permits, authorizations and approvals necessary to enable it to own, lease or otherwise hold its properties and assets and to conduct its business as presently conducted. The Company has all requisite power and authority to enter into this Agreement and the Merger and to carry out all terms of this Agreement. The Company is duly qualified to do business in each jurisdiction where the nature of its business or its ownership or leasing of its properties make such qualification necessary. The Company will deliver to Parent true and complete copies of its articles of organization and any bylaws or LLC control or operating agreements of the Company and any amendments thereto. The Company has no subsidiaries.

Section 3.06. Capital Structure. As of the Effective Time of this Merger, the outstanding capital structure of the Company will consist of those issued and outstanding shares held by such persons and in such amounts as are set forth on the Ledger for this



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3630DF911

transaction. All outstanding equity units of the Company shall be duly authorized, validly issued, fully paid and no assessable and not subject to or issued in violation of any purchase option, call option, right of first refusal, preemptive right, subscription right or any similar right under any provision of Florida Statutes or the governance documents of the Company, or any material contract, commitment or understanding to which the Company is a party or otherwise bound.

Except for equity units of the Company set forth on the Ledger for this transaction, as of the Effective Time there shall be no other equity units or derivative securities or convertible debt of the Company, or any rights whatsoever requiring the Company to issue or deliver equity interests in the Company.

Section 3.07. No Conflicts; Consents.

The execution and delivery by the Company of this Agreement does not, and the consummation of the merger transaction and compliance with the terms hereof, will not, conflict with, or result in any material violation of or material default under, or give rise to a right of termination, cancellation or acceleration of any material obligation or to loss of a material benefit under, or result in the creation of any material lien upon any of the properties or assets of the Company under any provision of (i) the governance documents or Articles of Organization of the Company, (ii) any material contract, lease, license, indenture, note, bond, agreement, permit, concession, franchise or other instrument to which the Company is a party or by which any of its respective properties or assets is bound, or (iii) any material judgment, order or decree or material law applicable to the Company or its properties or assets.

No material consent, approval, license, permit, order or authorization of, or registration, declaration or filing with, or permit from, any governmental entity or agency is required to be obtained or made by or with respect to the Company in connection with the execution, delivery and performance of this Agreement or the consummation of this merger transaction.

Section 3.08. Taxes. The Company has filed, or will file prior to the Effective Time, all federal, state and local Tax Returns required to be filed by it, and all such Tax Returns are true, complete and accurate in all material respects. All Taxes shown to be due on such Tax Returns, or otherwise owed, have been satisfied or will be satisfied prior to the Effective Time. There are no unpaid taxes in any material amount claimed to be due by the taxing authority of any jurisdiction, and the officers of the Company know of no basis for any such claim. No material

deficiency with respect to any taxes has been proposed, asserted or assessed against the Company.

Section 3.09. Litigation. There is no material formal action, suit, inquiry, notice of violation, proceeding (including any partial proceeding such as a deposition) or investigation pending against or affecting the Company or any of its properties, before or



DocuSign Envelope ID: 4D361126-7DE7-4567-826B-AAC3630DF911

by any court, arbitrator, governmental or administrative agency, or regulatory authority (federal, state, county, local or foreign). Neither the Company nor any director or officer thereof (in his capacity as such), is or has been the subject of any legal action within the past ten years involving a claim or violation of or liability under federal or state securities laws. The Company is not in default with respect to any order, writ, judgment, injunction, decree, determination, or award of any court or governmental agency or arbitration authority.

Section 3.10. Compliance with Applicable Laws. To the best of its knowledge, the Company is in material compliance with all applicable laws, including those relating to occupational health and safety and the environment, except for instances of noncompliance that, individually and in the aggregate, have not had and would not reasonably be expected to have a material adverse effect on the Company.

Section 3.11. Brokers. No broker, investment banker, financial advisor or other person is entitled to any broker's, finder's, financial advisor's or other similar fee or commission in connection with this merger transaction based upon arrangements made by or for the Company.

Section 3.12. Contracts. Other than any contracts listed in Schedule 3.12 attached hereto, there are no contracts that are material to the business, properties, assets, condition (financial or otherwise), results of operations or prospects of the Company. Except for any matters identified on Schedule 3.12, the Company is not in material violation of or in material default under any material contract to which it is a party or by which it or any of its properties or assets is bound. The Company's execution of this Agreement and the consummation of this merger transaction would not violate in any material respect any contract to which the Company is a party.

Section 3.13. Title to and Conditions of Properties. The Company does not own any real property. The Company has title to or leasehold interests in, all of its properties and assets used in the conduct of its business, including the Florida farm used to provide product inventory All such assets and properties, other than assets and properties in which the Company has leasehold interests, are free and clear of all liens or encumbrances, with the exception of any purchase liens that do not and will not materially interfere with the ability of the Company to conduct business.

All facilities, equipment, fixtures and other properties owned, leased or used by the Company are in reasonably good operating condition and repair, subject to ordinary wear and tear, and are adequate and sufficient for the Company's business.

Section 3.14. Insurance. The Company holds insurance policies for product, general and

casualty liability insurance, and believes its insurance coverage is adequate for its business needs and protection.



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF911

Section 3.15. Personnel and Labor Matters. There are no collective bargaining or other labor union agreements to which the Company is a party or by which it is bound, and no material labor dispute exists or, to the knowledge of the Company, is imminent with respect to any of the employees of the Company. The Company believes it has complied in all material respects with all laws relating to the employment of labor. Other than pursuant to ordinary arrangements of compensation as already disclosed to Parent, the Company is not under any obligation or liability to any officer, director, consultant, associate or affiliate of the Company.

Section 3.16. ERISA Compliance. The Company does not, and since its inception never has, maintained, or contributed to any "employee pension benefit plans" (as defined in Section 3(2) of ERISA) or "employee welfare benefit plans" (as defined in Section 3(1) of ERISA) for the benefit of any current or former employees, consultants, officers or directors of the Company.

Section 3.17. Disclosure. All disclosure provided to Parent and its representatives regarding the Company and its business and this merger transaction, furnished by or on behalf of the Company (including the Company's representations and warranties set forth in this Agreement) are true and correct and do not contain any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made therein, in light of the circumstances under which they were made, not misleading.

Section 3.18. Unlawful Payments. Neither the Company, nor, to the Company's knowledge, any director, officer, agent, employee or other person acting on behalf of the Company has, in the course of its actions for, or on behalf of, the Company: (i) used any corporate funds for any unlawful contribution, gift, entertainment or other unlawful expenses relating to political activity; (ii) made any direct or indirect unlawful payment to any foreign or domestic government official or employee from corporate funds; (iii) violated or is in violation of any provision of the U.S. Foreign Corrupt Practices Act of 1977, as amended; or (iv) made any unlawful bribe, rebate, payoff, influence payment, kickback or other unlawful payment to any foreign or domestic government official.

Section 3.19. Licenses and Permits. The Company has obtained and maintains all material federal, state, local and foreign licenses, permits, consents, registrations, memberships, authorizations and qualifications required to be maintained in connection with the business and operations of the Company as presently conducted. The Company is not in material default under any of such licenses, permits, consents, approvals, registrations, memberships, authorizations and qualifications.

Section 3.20. Environmental Laws. The Company: (i) is in compliance in all material respects with any and all Environmental Laws (as hereinafter defined), (ii) has received any permits, licenses or other approvals required of the Company under applicable Environmental Laws to conduct its business and (iii) is in compliance in all material respects with all terms and conditions of any such permit, license or approval. The term "Environmental Laws" means all federal, state, local or foreign laws relating to pollution or protection of human health or the environment (including, without limitation, ambient



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3530DF811

air, surface water, groundwater, land surface or subsurface strata), including, without limitation, laws relating to emissions, discharges, releases or threatened releases of chemicals, pollutants, contaminants, or toxic or hazardous substances or wastes (collectively, "Hazardous Materials") into the environment, or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of Hazardous Materials.

Section 3.21. Indebtedness. Except as set forth on Schedule 3.21 attached hereto, the Company (i) does not have any outstanding Indebtedness including obligations for borrowed money or any other obligations evidenced by secured or unsecured notes, bonds, debentures or similar instruments including any material contingent obligations, and (ii) is not a party to any contract, guaranty, agreement or instrument relating to any Indebtedness, the performance of which is expected to have a material adverse effect on the Company or its business or properties.

Section 3.22 Financial Statements. Parent will be provided with financial statements of the Company from its inception, including a balance sheet, operating statement and cash flow statement, which financial statements will present fairly in all material respects for such period the financial condition of the Company and its results of operations and cash flows.

## ARTICLE III

### *Representations and Warranties of Parent and Merger Sub*

Parent and Merger Sub represent and warrant as follows to the Company:

Section 3.01. Organization, Standing and Power. Parent is duly organized, validly existing and in good standing under the laws of the State of Nevada and has full corporate power and authority and possesses all governmental franchises, licenses, permits, authorizations and approvals necessary to enable it to own, lease or otherwise hold its properties and assets and to conduct its businesses as presently conducted. Parent is duly qualified to do business in each jurisdiction where the nature of its business or the ownership or leasing of its properties make such qualification necessary and where the failure to so qualify would reasonably be expected to have a material adverse effect on Parent. Unless the context requires otherwise, all references in this Article III to "Parent" shall be construed to being a reference to Parent and Merger Sub taken together as one entity.



DocuSign Envelope ID: 4D361126-7DE7-4667-8258-AAC3530DF911

Section 3.02. Capital Structure. Prior to the Effective Time of this Merger, the authorized capital stock of Parent will consist of Two Billion One Hundred Million (2,100,000,000) shares of capital stock, par value $.001 per share, including Two Billion common shares and One Hundred Million Preferred Shares. All outstanding shares of the capital stock of Parent are duly authorized, validly issued, fully paid and non-assessable, and are not in violation of any provision or term of the Articles of Incorporation and Bylaws of Parent or laws of the State of Nevada or any contract to which Parent is a party or otherwise bound.

The outstanding equity capital of Merger Sub consists of 100 membership units, all owned by Parent, and all of which are validly issued, fully paid and non-assessable. Merger Sub has no other outstanding securities or derivative interests therein, and is a wholly-owned subsidiary of Parent which was formed specifically for the purpose of this Merger and that has not conducted any business or acquired any property.

Section 3.03. Authority; Execution and Delivery; Enforceability. The execution and delivery by Parent and Merger Sub of this Agreement and the consummation by them of this merger transaction have been duly authorized and approved by the Board of Directors of Parent and the sole member of Merger Sub. This Agreement constitutes a legal, valid and binding obligation of Parent and Merger Sub, enforceable against them in accordance with its terms.

Section 3.04. No Conflicts; Consents.
(a)      The execution and delivery by Parent and Merger Sub of this Agreement, do not, and the consummation of this merger transaction and compliance with the terms hereof will not, conflict with, or result in any violation of or default under, or give rise to a right of termination, cancellation or acceleration of any obligation or to loss of a material benefit under, or to increased, additional, accelerated or guaranteed rights or entitlements of any person under, or result in the creation of any Lien upon any of the properties or assets of Parent under, any provision of (i) the Articles of Incorporation and Bylaws of Parent, (ii) any material contract to which Parent is a party or by which any of its properties or assets is bound or (iii) any material legal obligation or material law applicable to Parent or its properties or assets.
(b)      Other than any required filings with governmental divisions or agencies to obtain a Certificate of Merger for this transaction, no consent of, or registration, declaration or filing with, or permit from, any governmental entity or agency is required to be obtained or made by or with respect to Parent or Merger Sub in connection with the execution, delivery and performance of this Agreement or the consummation of this merger transaction.

Section 3.05 Validity of Shares. The Common Shares of Parent to be issued incident to this Merger, when issued and delivered pursuant to the terms of this merger transaction, shall be duly authorized, validly issued, fully paid and non-assessable.

Section 3.06 Taxes. All Tax Returns which have been filed by Parent are true, complete and accurate. And any taxes shown to be due on such Tax Returns, or otherwise owed,



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3630DF911

have been paid. There are no unpaid taxes of any material amount claimed to be due by the taxing authority of any jurisdiction, and the officers of Parent know of no basis for any such claim. No deficiency with respect to any taxes has been proposed, asserted or assessed against Parent, and there are no liens for Taxes on the assets of Parent.

Prior to the Effective Time, Parent will file any overdue corporate tax returns with the IRS.

Section 3.07. Employment and Benefit Plans. Parent does not have any collective bargaining agreement or any bonus, pension, profit sharing, deferred compensation, incentive compensation, stock ownership, stock purchase, stock option, phantom stock, retirement, vacation, severance, disability, death benefit, hospitalization, medical or other plan, arrangement or understanding providing benefits to any current or former employee, officer or director of

Parent. There are no written employment, consulting, indemnification, severance or termination agreements or arrangements between Parent and any of its current or former employees, officers or directors.

Section 3.08. ERISA Compliance; No Benefit Plans. Parent does not maintain or contribute to any "employee pension benefit plans" (as defined in Section 3(2) of ERISA), "employee welfare benefit plans" (as defined in Section 3(1) of ERISA) or any other Benefit Plan for the benefit of any of its current or former employees, consultants, officers or directors.

Section 3.09. Litigation. There is no claim, dispute, action, suit, proceeding or investigation pending or, to the knowledge of Parent, threatened, against or affecting the existing or contemplated business of Parent, or challenging the validity or propriety of the transactions contemplated by this Agreement, at law or in equity or before any federal, state, local, foreign or other governmental authority, board, agency, commission or instrumentality. There is no outstanding judgment, order, ruling, injunction, stipulation or decree of any court, arbitrator or federal, state, local, foreign or other governmental authority, board, agency, commission or instrumentality, against or materially affecting the existing or contemplated business of Parent.

Section 3.10. Compliance with Applicable Laws. Parent is in material compliance with all applicable laws, including those relating to occupational health and safety, the environment, export controls, trade sanctions and embargoes. Parent has not received any written or verbal communication from a governmental entity or agency that alleges Parent is not in compliance with any applicable law.

Section 3.11. Contracts. There are no written contracts that are material to the business, properties, assets, condition (financial or otherwise), or results of operations of Parent, other than the license for its pet waste disposal product.



DocuSign Envelope ID: 4D361126-7DE7-4567-826B-AAC3530DF911

Section 3.12. Title to Properties. Parent has good title to, or valid license or leasehold interests in, all of its properties and assets used in the conduct of its business. All such assets and properties are free and clear of all and any liens and encumbrances. Parent has complied in all material respects with the terms of any leases to which it is a party. Parent does not own any real property.

Section 3.13. Labor Matters. There are no collective bargaining or other labor union agreements to which Parent is a party or by which it is bound, and no labor dispute exists with respect to any present or former employee of Parent.

Section 3.14. Transactions With Affiliates and Employees. None of the officers, directors or employees of Parent is a party to any transaction with Parent, including any contract, agreement or other arrangement providing for the furnishing of contract services to or by, providing for rental of real or personal property to or from, or otherwise requiring payments to or from any officer, director or employee or, to the knowledge of Parent, any entity in which any officer, director, or employee has a substantial interest or is an officer, director, trustee or partner of such entity.

Section 3.15. No Additional Agreements. Parent does not have any agreement or understanding with any director, officer, employee, affiliate or equity owner of the Company with respect to this merger transaction other than as included in this Agreement.

Section 3.16. No Post-Merger Indebtedness. At the Effective Time of the Merger, Parent will have no outstanding indebtedness for borrowed money or loans or other obligations evidenced by secure or unsecured notes, bonds, debentures or similar instruments including any contingent obligations. At the Effective Time of the Merger, Parent also will have no outstanding current or long-term liabilities whether for accounts payable, employee or executive compensation, or any other matter, except for the contingent obligation to the transfer agent to complete the issuance of common stock for this Merger. At the Effective Time of the Merger, Parent also will not be under any obligation or liability to any current or former officer, director, employee, affiliate or associate of Parent.

Section 3.17. Brokers. Parent has no obligation to pay for any brokerage or finder's or financial advisory fees or commissions in connection with this merger transaction.

Section 3.18 Financial Statements. Parent's financial statements for past fiscal years (a) have been prepared in accordance with GAAP applied on a basis consistent with prior periods, (b) are in accordance with the books and records of Parent and (c) present fairly in all material respects the financial condition of Parent at the dates therein specified and the results of its operations and cash flows for the periods therein specified.



DocuSign Envelope ID: 4D361126-7DE7-4667-825B-AAC3630DF911

## ARTICLE IV

### Letter of Transmittal

Section 4.01 Equity Holders of the Company. Promptly after the Effective Time, Parent shall cause to be mailed to each record unit equity holder of the Company as set forth on the Ledger for this transaction, a "Letter of Transmittal" that shall contain representations and covenants from such unit holder including that (a) such unit holder has full right, power and authority to deliver such unit holder's units for conversion along with the related and executed Letter of Transmittal, (b) the delivery of such units will not violate, conflict with, or result in a breach of or default under any indenture, loan or credit agreement, deed of trust, mortgage or any other agreement or instrument to which the unit holder is bound or affected, (c) such unit holder has good, valid and marketable title to the units being surrendered for conversion and the unit holder is not affected by any voting trust, agreement or other arrangement affecting any voting or other rights of such units of the Company; (d) such unit holder is through this transaction acquiring Parent securities for investment purposes, and not with a view to selling or otherwise distributing such securities in violation of any securities laws, and (e) such unit holder has had the opportunity to ask and receive answers to any questions such person may have had concerning the terms and conditions of the Merger, Parent Common Stock and any other applicable information, and has obtained any such additional information that such unit holder has requested.

## ARTICLE V

### Deliveries

Section 5.01. Deliveries of the Company. Unless such deliveries are waived by Parent prior to Closing, at or prior to Closing, the Company shall deliver to Parent:

(a)     A certificate from the Chief Executive Officer or Chief Manager of the Company evidencing a properly noticed and held meeting of the Governance Board of the Company, if any, approving this Agreement and its merger transaction as required by and pursuant to the laws of the State of Florida and any governing or operating documents of the Company;

(b)     A certificate from the Chief Executive Officer or Chief Manager of the Company evidencing a properly noticed and held meeting or written action of the member unit holders of the Company in compliance with Florida Statutes, whereby such member unit



DocuSign Envelope ID: 4D361126-7DE7-4687-825B-AAC3630DF911

holders approved and consented to this Agreement and its merger transaction as required by Florida Statutes and any governing documents of the Company;

(c)     the Ledger for this transaction listing all unit holders of the Company including their full names, addresses and Social Security or federal Tax ID numbers, as the case may be, the number of member units of the Company owned by each of them, and the number of Parent Common Shares to be issued to each of them as required by the terms of this merger transaction, which list shall be certified by the Chief Executive Officer of the Company;

(d)     a certificate certified by the Chief Executive Officer of the Company confirming the accuracy of the representations and warranties of the Company contained in this Agreement;

(e)     an executed copy of the Certificate of Merger to be filed with the Secretary of State of Florida in order for this statutory merger transaction to become effective;

Section 5.02. Deliveries of Parent. Unless waived by the Company prior to Closing, Parent shall deliver to the Company:

(a)     a certificate from the Chief Executive Officer of Parent evidencing the written consent and approval of this Agreement and its merger transaction by written action of the Board of Directors of Parent pursuant to Nevada law;

(b)     a certificate from Parent, signed by its Chief Executive Officer, certifying the attached copies of resolutions of the Board of Directors of Parent approving this Agreement and its merger transaction, are all true, complete and correct and remain in full force and effect;

(c)     a certificate signed by the Chief Executive Officer and the sole member of Merger Sub certifying the approval of this Agreement and its merger transaction on behalf of Merger Sub; and

(d)     an executed copy by Merger Sub of the Certificate of Merger to be filed with the Secretary of State of Florida in order for this statutory merger transaction to become effective.



*ARTICLE VI*

*Further Conditions to Closing*



DocuSign Envelope ID: 4D381128-7DE7-4567-825B-AAC3530DF911

Section 6.01. Company Conditions Precedent. Unless waived in writing by the Company, the obligations of the Company to enter into and complete the Closing and this merger transaction are subject to the fulfillment of the following conditions:

(a)     Representations and Covenants. The representations and warranties of Parent contained in this Agreement shall be true in all material respects on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. Parent shall have performed and complied in all material respects with all conditions, covenants and agreements required by this Agreement to be performed or complied with by Parent on or prior to the Effective Time.

(b)     Litigation. No action, suit, investigation or proceeding shall have been instituted or threatened before any court or governmental or regulatory body to restrain, modify or prevent the carrying out of the Merger or to seek damages or a discovery order in connection therewith.

(c)     Deliveries. The deliveries specified in Section 5.02 shall have been made by Parent.

(d)     Unit Holder Approval. The Company shall have received the affirmative vote of its equity unit holders approving this Agreement and the merger transaction hereunder as required by Florida Statutes.

Section 6.02 Parent Conditions Precedent. Unless waived in writing by Parent, the obligations of Parent to enter into and complete the Closing of this Agreement are subject to the fulfillment on or prior to the Closing Date of the following conditions:

(a)     Representations, Warranties and Covenants. The representations and warranties of the Company contained in this Agreement shall be true in all material respects on and as of the Closing Date with the same force and effect as though made on and as of the Closing Date. The Company shall have performed, and complied in all material respects with, all conditions, covenants and agreements required by this Agreement to be performed or complied with by the Company on or prior to the Closing Date.

(b)     Litigation. No action, suit or proceeding shall have been instituted or threatened before any court or governmental or regulatory body to restrain, modify or prevent the carrying out of this Agreement and its merger transaction or to seek damages or a discovery order in connection therewith.

(c)     Deliveries. The deliveries specified in Section 5.01 shall have been made by the Company.

(d)     Unit Holder Approval. The Company shall have received unit holder approval of this merger as required by Florida Statutes.



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3630DF811

(c)     Customary Due Diligence Request. The Parent will request and Company shall provide any and all due diligence requested by the Parent.

*ARTICLE VII*

*Certain Covenants*

Section 7.01 Public Announcements. The Company and Parent will consult with each other before issuing, and provide each other the opportunity to review and comment upon, any press releases or other public statements with respect to this Agreement and its merger transaction, and shall not issue any such press release or make any such public statement prior to such consultation, unless required by applicable law or regulatory agencies.

Section 7.02 Continued Efforts. Each party hereto shall use commercially reasonable efforts to take all actions reasonably necessary to consummate this Agreement and its merger transaction. After the Effective Time, if any further actions are necessary or desirable to carry out the purposes of this Agreement and its merger transaction, the respective officers and directors of the parties hereto shall use their best efforts to take all such further actions.

Section 7.03 Indemnification. Parent shall indemnify and hold harmless the Company against and in respect of any and all damages, losses, claims, penalties, liabilities, costs and expenses that arise from or relate or are attributable to any material misrepresentation or material breach of any representation, warranty or covenant made by Parent in this Agreement.

The Company shall indemnify and hold harmless Parent against and in respect of any and all damages, losses, claims, penalties, liabilities, costs and expenses that arise from or relate or are attributable to any material misrepresentation or material breach of any representation, warranty or covenant by the Company in this Agreement.

Promptly after the assertion of any such claim by a third party or the occurrence of any other event which may give rise to a claim for indemnification from an indemnifying party ("Indemnitor") under this section, an indemnified party ("Indemnitee") shall notify the Indemnitor in writing of such claim. The Indemnitor shall have the right to assume the control and defense of such action, provided that the Indemnitee may participate in the defense of such action subject to the Indemnitor's reasonable direction and at Indemnitee's sole cost and expense. The party contesting any such claim shall be furnished all reasonable assistance in connection therewith by the other party and be



DocuSign Envelope ID: 4D361126-7DE7-4667-825B-AAC3530DF911

given full access to all information and documents relevant thereto. In no event shall any such claim be settled without the Indemnitor's consent.

Tax Indemnity. Without prejudice, if the merger as contemplated herein is deemed to not qualify as a 368 tax free re-organization and causes the consideration contemplated herein to be deemed taxable to Pre-Merger Holders, the Parent shall, upon demand of the Agent of Pre-Merger Holders, promptly indemnify the Pre-Merger Holders, from the resulting liability and against such payment, together with any interest, penalties, costs and expenses payable or incurred in connection therewith.

Section 7.04 Termination. This Agreement may be terminated prior to Closing by: (i) the mutual written consent of both parties hereto, (ii) The Company or Parent as the non-breaching party if there has been a material breach by the other party of a representation or warranty or covenant of this Agreement and such breach has not been cured prior to the Closing Date of this Agreement; or (iii) by Parent if unit holders of the Company have failed to approve this Agreement prior to December 31, 2018.

## ARTICLE VIII

### Conduct of Business Pending Merger

Section 8.01 Conduct of Business By Parties. Prior to the Effective Time, unless the parties hereto agree otherwise in writing, the following shall apply from the date of this Agreement:

(a)     the business of the Company shall be conducted only in its ordinary course;

(b)     the business of Parent shall consist primarily of satisfying the terms of this Agreement and its merger transaction;

(c)     Merger Sub shall have no business other than functioning as a wholly-owned subsidiary of Parent for the purpose of merging with the Company;

(d)     The Company shall use its best commercially reasonable efforts to preserve intact its business organization, to keep available the service of its officers and employees, and to preserve the good will of any customers, suppliers, consultants, agents, and all others having business relationships with the Company;

(e)     Neither the Company or Parent shall enter into any new employment or material consulting agreements or arrangements with their employees or officers or consultants,



DocuSign Envelope ID: 4D361126-7DE7-4567-826B-AAC3530DF911

nor shall they grant any material increases in the compensation or benefits of any of their officers or employees;

(f)     Prior to the closing of this Merger, the Company and Parent shall not without the written consent of each other (i) issue or agree to issue any additional capital stock or options, warrants or other rights of any kind in respect to their capital stock or units other than provided in this Agreement; (ii) acquire or dispose of any material fixed or other substantial assets other than in the ordinary course of business other than provided in this Agreement; (iii) incur any additional indebtedness or any other material liabilities unless in the ordinary course of business, (iv) enter into any material contract, commitment or arrangement with respect to any of the foregoing, or (v) enter into any negotiations, understanding, term sheet, agreement or arrangement to effect any kind of merger or business combination with anyone other than the parties to this Agreement.

*ARTICLE IX*

*Miscellaneous*

Section 9.01 Notices. All notices, requests, claims, demands and other communications under this Agreement shall be in writing and shall be deemed given upon personal service, or upon receipt by either party of any such matter through first class U.S. postal mail, or by email letter attachment acknowledged by the receiving party, using the following addresses (or at such other address for a party as shall be later specified by like notice):

If to Parent or Merger Sub, to:

Emerald Organic Products, Inc. c/o Michael Berg
331 Dante Ct, Suite E
Holbrook, NY 11741
Email address:

Section 9.02. Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed by the Company and Parent. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any subsequent default or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of any party hereto to exercise any right hereunder in any manner impair the exercise of any such right.



DocuSign Envelope ID: 4D361126-7DE7-4687-8258-AAC3530DF811

Section 9.03. Severability. If any term or other provision of this Agreement is invalid, illegal or incapable of being enforced by any rule or law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the merger transaction contemplated hereby is not affected in any manner materially adverse to any party hereto.

Section 9.04. Entire Agreement; Survival of Terms. This Agreement, including any schedules and exhibits attached hereto, constitutes the entire agreement between the parties hereto relating to this Agreement and its merger transaction, and supersedes all prior agreements and understandings, both written and oral, among the parties hereto with respect to this Agreement and its merger transaction. All provisions of this Agreement that by their nature are intended to survive the Closing or the termination of this Agreement shall so survive, including without limitation, the representations and warranties contained herein.

Section 9.05. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Florida, without reference to principles of conflicts of laws; provided that the merger between the Company and Merger Sub shall be governed by Florida Statutes. Regarding any action or proceeding brought for the purpose of enforcement of any term or provision of this Agreement, all parties hereby waive any and all rights to trial by jury.

Section 9.06. Assignment. Neither this Agreement nor any of the rights, interests or obligations under this Agreement shall be assigned, in whole or in part, by operation of law or otherwise by any of the parties hereto without the prior written consent of the other parties. Any purported assignment without such written consent shall be void. This Agreement is binding upon, inures to the benefit of, and is enforceable by, each party hereto and any respective successors or permitted assigns.

Section 9.07. Additional Acts and Deliverables. From time to time after the date hereof and the Closing Date of this Agreement and its merger transaction, and without further consideration, each party hereto shall execute and deliver, or cause to be executed and delivered, to the other party such further instruments and documents, and take such other actions as such other party may reasonably request in order to consummate this Agreement and its merger transaction.

Section 9.08 No Third Party Beneficiaries. This Agreement is made and entered into for the sole benefit, purpose and protection of the parties hereto and any successors thereof, and no other person shall have, establish or is entitled to any benefit, right of action, or standing under this Agreement.

Section 9.09 Counterparts. This Agreement may be executed in one or more counterparts, with the same effect as if all parties hereto had signed the same document. Each such counterpart shall be an original, but all such counterparts together shall constitute a single agreement.



DocuSign Envelope ID: 4D361126-7DE7-4567-825B-AAC3630DF911

IN WITNESS WHEREOF, the parties hereto have executed and delivered this
Agreement and Plan of Merger as of the date first above written.

Parent: EMERALD ORGANIC PRODUCTS, INC.

By:
Name: Ian Parker
Title: Chief Executive Officer


The Company: DERMSERV LLC

By: HARDIKKUMAR PATEL
Name:
Title: OWNER


Merger Sub: EOP MARKETING MERGER SUB LLC

By:
Name: Ian Parker
Title: Manager